IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 1 2

CLERK, U.S. DISTRICT COURT
BY _____
DEPUTY

CHERYL FULLER, §
    PLAINTIFF, §
     §
VS. § CIVIL ACTION NO. 4:09-CV-197-A
     §
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL SECURITY, §
    DEFENDANT. §

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>
<u>AND</u>
<u>NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

I. <u>STATEMENT OF THE CASE</u>

The plaintiff, Cheryl Fuller ("Fuller"), filed an application for a period of disability as a

medicare-qualified government employee under Title II on March 13, 2003, alleging a disability

onset date of January 22, 2003. (Transcript ("Tr.") 14, 69-71.) On February 14, 2003, Fuller filed

an application for supplemental security income payments under Title XVI ("SSI"). (Tr. 14, 439-

441.) In her application, Fuller claimed disability due to a number of impairments including nausea,

fatigue, depression, a spinal infection, ulcerative colitis, and pain in her knees, hip, back, neck, and

shoulder. (Tr. 93, 959-60.) That application was denied initially and on reconsideration. (Tr. 443-

54.) Fuller timely requested a hearing before an administrative law judge ("ALJ"), and a hearing was held in Fort Worth, Texas before ALJ Ward D. King on April 14, 2005. (Tr. 14, 464-67.)

On July 28, 2005, the ALJ issued a decision finding that she was not disabled. (Tr. 14, 459-64.) On April 7, 2006, the Appeals Council vacated the ALJ's decision and remanded the case for consideration of new and material evidence pertaining to Fuller's history of depression and for clarification of the ALJ's evaluation of Dr. Linda Siy's ("Siy") treating physician opinion. (Tr. 14, 464-67.)

On August 8, 2007, the ALJ conducted a supplemental hearing. (Tr. 14, 956-68.) On February 6, 2008, the ALJ issued a second decision finding Fuller not disabled. (Tr. 11-26.) The Appeals Council denied Fuller's request for review of that opinion on February 6, 2009. (Tr. 5-8.) Fuller subsequently filed the instant action in federal court on April 1, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere

scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUES

Fuller presents the following issues:

1. Whether the ALJ improperly evaluated Fuller's impairments, including her alleged impairment of chronic fatigue syndrome ("CFS");

2. Whether the ALJ improperly evaluated the relevant medical opinions; and

3. Whether substantial evidence supports the ALJ's residual functional capacity ("RFC") determination.

(Plaintiff's Brief ("Pl. Br.") at 11-24.)

### IV. ADMINISTRATIVE RECORD

A. <u>Background and Vocational History</u>

Fuller was born on June 19, 1960. (Tr. 942, 958.) She has a high school education. (Tr. 942-43; 958.) She had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (Tr. 15, 943.)

B. <u>Administrative Hearing</u>

At her initial hearing on April 14, 2005 before the ALJ, Fuller was represented by an attorney. (Tr. 941-53.) Fuller told the ALJ that she last worked in January 2003. (Tr. 943.) She testified that her work history included jobs as a cafeteria worker, as an apartment cleaner and

painter, and she said she had also done some sewing work. (Tr. 943-44.) Fuller said she had been diagnosed with ulcerative colitis in January 2004. (Tr. 944.) She also told the ALJ that she had experienced constant nausea and pain since before she was fired from her job. (Tr. 944-45.) She said she was terminated for missing too much work, at least two to three days a week. (Tr. 945.) Fuller testified that she spent most of the day in bed and that she was unable to go to the grocery store or clean her house. (Tr. 946.)

Fuller also told the ALJ that she had pain in her neck, limited movement in her arms, and numbness in her fingers on both hands, which made it difficult for her to hold onto things. (Tr. 946-47.) She described having pain in her knees and hip. (Tr. 949.) She said she had a problem with depression, that she got very nervous, and that she had crying spells almost daily. (Tr. 947.) She also told the ALJ that she got angry and would "scream and throw things." (Id.) Fuller testified that she stayed tired, and that she would "fall asleep eating." (Id.) She also said she had difficulty sitting and walking. (Tr. 949.) When questioned about the side effects of her prescribed medications, Fuller said the Neurontin she took "bother[ed] her speech" and forced her to talk slowly to get her words out. (Tr. 949-50.)

On August 8, 2007, at Fuller's supplemental hearing before the ALJ, Fuller was again represented by her attorney. (Tr. 965-68.) Fuller testified on her own behalf, and vocational expert ("VE") Todd Harden ("Harden") also testified. (Id.) Fuller told the ALJ that she was still having problems with depression, that her moods would "go back and forth between crying and just doing nothing," and that she stayed "nervous" and "shaky." (Tr. 958-59.) She said that she had no energy and that she was nauseous all the time. (Tr. 959-60.) She described pain in her feet, knees, hip,

lower back, neck and shoulder. (Tr. 960.) Fuller testified that she could not sit for long because she

would get sick, and she said that it hurt her feet to walk. (*Id.*) She said she had not used alcohol or

illegal drugs since 2004. (Tr. 961.) She also described difficulty concentrating and remembering

things. (*Id.*) Finally, she told the ALJ she had trouble lifting things, stating that ten pounds was

about the most weight she was capable of lifting. (Tr. 962.)

After Fuller completed her testimony, the VE testified. The ALJ asked him to consider the

hypothetical of a younger individual with a high school education and the same work history as

Fuller. He also asked the VE to assume that the hypothetical individual had the following RFC:

> The individual can lift and carry 20 pounds occasionally and 10 pounds frequently. The
> individual can sit, stand, and walk individually or in combination three out of an eight hour
> workday and otherwise perform the full range of light work. However, the individual has
> these limitations. Only occasional working overhead. The individual cannot perform high
> stress jobs. The individual is limited to jobs with a reasoning development level of one
> through three as defined by the Dictionary of Occupational Titles [*DOT*].

(Tr. 965.) The ALJ told the VE to assume that the individual could not perform Fuller's past

relevant work. (*Id.*) He then asked the VE whether such an individual could perform other work

existing in significant numbers in the national economy. (Tr. 965-66.) The VE responded that such

an individual could perform jobs as an assembly machine tender, estimated at 30,000 in the nation,

2,400 in Texas, a bench assembler, estimated at 75,000 in the nation, 6,000 in Texas, and an

electronics worker, estimated at 30,000 in the nation, 2,000 in Texas. (Tr. 966.) The VE described

each of those jobs as an entry level position with a specific vocational preparation ("SVP") of two.[1]

---

[1] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques,
acquire the information, and develop the facility needed for average performance in a particular occupation. *See
Dictionary of Occupational Titles*, app. C (rev. 4th ed.1991). Unskilled work usually requires less than thirty days of
training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and
skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p. *See also generally* 20 C.F.R. §§
404.1568,416.968.

(*Id.*)  The VE told the ALJ that, to the best of his knowledge, there was no conflict between his testimony and the description of those jobs contained in the *DOT*.  (*Id.*)

### D.     The ALJ's Decision

In entering his decision following the completion of Fuller's supplemental hearing, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 14-26); 20 C.F.R. § 416.920(b).  At step one, the ALJ found that Fuller did not meet the disability insured status requirements of the Act as of the alleged onset date of January 22, 2003 or at any time thereafter.  (Tr. 15.)  He found that she did, however, meet the requirements for entitlement to a Period of Disability as a Medicare-Qualified Government Employee as of her alleged onset date of January 22, 2003, and that she continued to meet these requirements through December 31, 2007.  Thus, she was required to establish her disability as of or prior to the latter date in order to be entitled to a Period of Disability as a Medicare-Qualified Government Employee.  (Tr. 15, citing 20 C.F.R. §§ 401.101, *et seq.* ; Exh. 1D at 2-3, Exh. D at 1-2.)  He also found that she had not engaged in substantial gainful activity at any time relevant to his decision.  (*Id.*, citing 20 C.F.R. §§ 404.1510, 404.1572, 416.910, and 416.972; Exh. 1D at 4-6; Exh. 2D at 1-6; Exh. 2E at 4; claimant's testimony.)

At step two, the ALJ determined as follows:

The medical evidence establishes Ms. Fuller has degenerative changes in her cervical and lumbar spine, hypertension, ulcerative colitis, a history of cervical spine infection, anemia, and major depressive disorder.  She has a "severe" combination of impairments, but she does not have any impairment or combination of impairments listed in, or that equals in severity an impairment listed in, 20 C.F.R. Part 303, Subpart P, Appendix 1.

(Tr. 15, citing, *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).)

The ALJ stated that he had considered the opinions of the State Agency medical consultants. (Tr. 15-16.) He indicated that he had given those opinions significant weight in most, but not all, respects, noting that the updated medical evidence indicated that Fuller had a "severe" mental impairment which was not found by the state agency medical consultants. (Tr. 16.)

The ALJ then formulated an RFC for Fuller as follows:

> Ms. Fuller retains the ability to obtain, perform, and maintain the following residual functioning capacity: lift and carry 20 pounds occasionally and ten pounds frequently; sit, stand, and walk (individually or in combination) throughout an eight-hour workday; and otherwise perform the full range of light work, except: she can only occasionally work overhead; she can perform jobs with a reasoning development level of one, two, or three (as defined in the *Dictionary of Occupational Titles*), and she must avoid high stress jobs.

(Tr. 24, citing 20 C.F.R. §§ 404.1545 and 416.945; *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002); *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).)

At step four, the ALJ found that Fuller could not return to her past relevant work because such work was precluded by the limitations in her RFC. (*Id.*) Then, at step five, the ALJ accepted the testimony of the VE and found that Fuller could perform other work existing in significant numbers in the national economy, including jobs as an assembly machine tender, a bench assembler, and an electrical worker. (Tr. 24-25.) Finally, the ALJ concluded that Fuller was not disabled within the meaning of the Act at any time relevant to his decision. (Tr. 25.)

## V. DISCUSSION

A.     <u>Whether the ALJ properly evaluated Fuller's impairments, including her alleged impairment of CFS.</u>

Fuller claims that the ALJ erred in failing to find that she had the severe impairment of CFS. (Pl. Br. at 13-14.) In support of her position, she cites to a medical assessment made by Dr. Yun

Tran ("Tran"). (Pl. Br. at 14; Tr. 748.) But the record reveals that Fuller was never actually diagnosed with CFS. Rather, Tran stated on one occasion that Fuller "most likely [had] [CFS]," and noted that she would "check into the criteria" for CFS. (*Id.*) Even though Tran continued to treat Fuller throughout 2007, the record contains no further mention of the possible diagnosis, nor is there any evidence that further testing was ever conducted. (*See, e.g.*, Tr. 725-51.) And there is no evidence in the record that any other physician treating Fuller ever considered diagnosing her with CFS.

Moreover, "[t]he mere presence of some impairment is not disabling per se." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009). Fuller must demonstrate that she was "so functionally impaired" by her CFS that she was "precluded from engaging in any substantial gainful activity." *Id.* Fuller's subjective complaints provide the only evidence supporting her contention. (Pl. Br. at 14.) While an ALJ is required to consider subjective evidence of pain, it is within his discretion to determine the disabling nature of that pain, and his "determinations are entitled to considerable deference." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Fuller's subjective complaints combined with Tran's isolated comment do not indicate the presence of severe CFS, and the Court finds that the ALJ properly evaluated Fuller's severe impairments.

B.   Whether the ALJ improperly evaluated the relevant medical opinions.

Fuller next argues that the ALJ applied the incorrect legal standard in assessing the relevant medical opinions of her treating physicians. Specifically, she contends that the ALJ did not give

proper weight to the opinions of Dr. Siy, Dr. Garrick Prejean ("Prejean"), and Dr. Tran. (Pl. Br. at 14-21; Tr. 23-24; 617-20; 659-62; 907-09.)

In order to qualify as a "treating source," a physician must have treated the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." 20 C.F.R. § 404.1502. While more weight is generally given to treating source opinions, an ALJ may reject a treating physician's opinion when it is conclusory or otherwise is not supported by evidence. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). An ALJ must provide "good reasons" for the weight given to a treating source's opinion if he or she chooses not to give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

In *Newton*, the Fifth Circuit Court of Appeals held that an ALJ may reject the opinion of a treating physician, but that he must first apply the six-factor analysis provided in 20 C.F.R. § 404.1527(d)(2) as follows: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the treating physician's opinion by medical evidence; (4) consistency with the record as a whole; (5) specialization; and (6) any other factors which tend to support or contradict the treating physician's opinion. *Newton*, 209 F.3d at 456-58; 20 C.F.R. § 404.1527(d)(2). Legal conclusions, however, such as conclusions that a patient is "disabled" or "unable to work" are "reserved to the Commissioner" and "have no special significance in the ALJ's determination." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Moreover, an ALJ is free to reject all or part of a medical source's opinion when the overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). As set forth

below, the Court finds that the ALJ properly analyzed the opinions of each of Fuller's treating physicians. (Tr. 15-16.)

        1.     <u>The ALJ properly evaluated Siy's opinion.</u>

First, Fuller claims that the ALJ failed to properly evaluate the treating physician opinion of Siy, despite an Appeals Council order on the issue. (Pl. Br. at 15-16; Tr. 466.) Specifically, the Appeals Council instructed the ALJ on remand to further evaluate Siy's opinion in assessing Fuller's RFC and to provide a "statement of the reasoning provided regarding the weight, if any, assigned to Siy's opinion." (Tr. 466.)

In February 2005, Siy completed a check-list assessment stating that Fuller was permanently disabled for more than six months due to ulcerative colitis. (Tr. 23; 268.) Siy provided no other information or comment on the form. (Tr. 268.) In his opinion after remand, the ALJ noted Siy's assessment, but was not required to accord it controlling weight because it was a legal conclusion reserved to the Commissioner. (Tr. 23); 20 C.F.R. § 404.1527(e), 416.927(e); *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir.2003).

On June 23, 2005, Siy completed an RFC questionnaire in connection with Fuller's request for review, opining that Fuller had neck and back pain that would constantly interfere with her attention and concentration, that she could sit for less than two hours and stand for less than two hours in an eight-hour workday, that she could not perform even low-stress jobs, and that her impairments would cause her to miss more than four days of work per month. (Tr. 17, 617-20.) The ALJ considered and rejected Siy's opinions contained in the RFC questionnaire, finding that Siy's own treatment notes were inconsistent with her assessment of limitations. (Tr. 23; 617-20.) For

example, on May 14, 2004, Siy noted that Fuller had full range of motion in her neck even though she alleged that she had neck pain. (Tr. 217.) That same day, Siy also noted that Fuller's gait was normal and that she had only mild tenderness in her back, despite her complaints of chronic pain following her cervical spine infection. (*Id.*) And in August 2004, Siy noted that Fuller's back, neck, and extremities were normal. (Tr. 225.)

The ALJ found that such evidence conflicted with Siy's opinion that Fuller's disabling pain would interfere with her ability to work. (Tr. 23, 617-20.) Moreover, the ALJ found that Siy's opinion was inconsistent with the evidence in the record as a whole. (Tr. 23.) For example, in 2003, during a consultative physical exam, Dr. David Ray ("Ray") noted that Fuller was able to sit, stand, and move without assistance and that she could squat and walk heel-to-toe without difficulty. (Tr. 747.) He also noted that she had full range of motion in her neck despite having decreased range of motion in her lumbar spine. (Tr. 21, 109.) In October 2005, examiners in the emergency room (where Fuller reported with a skin rash) noted that she was able to ambulate without assistance and that she did not report having any pain. (Tr. 647.) And in September 2006, Tran noted that Fuller's musculoskeletal examination yielded results which were "pretty much normal with full range of motion," and noted that she had good pulses in her extremities. (Tr. 747.) There are also numerous other physical examinations in the record yielding normal results. (*See, e.g.*, Tr. 292, 390, 393, 396, 437, 648, 710, 759, 767.) While magnetic resonance imaging ("MRI") scans support Siy's diagnosis of degenerative disc disease, again, the mere mention of a diagnosis in the records does not establish a disabling impairment. *See Hames*, 707 F.2d 165. (Tr. 23, 617-20.)

-12-

Additionally, even though Siy opined that Fuller's pain would interfere with her attention and ability to concentrate, this finding is contradicted by other evidence in the record. In May 2003, mental health examiners at John Peter Smith Hospital ("JPS") found that Fuller's concentration was fair. (Tr. 104.) Also in 2003, during a psychological consultative examination, Dr. Jyoti Patel ("Patel") noted that she was able to subtract a series of sevens from 100 and to repeat five digits backward and forward. (Tr. 104.) Other examiners also found her to have "fair" concentration. (*See, e.g.,* Tr. 639.) The Court finds that the ALJ had good cause to disregard Siy's findings regarding Fuller's ability to maintain attention and concentration as it was otherwise unsupported by the evidence in the record. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). An ALJ may disregard medical findings when the opinion is conclusory or contradicted by other medical evidence. *See Greenspan v. Shalala*, 238 F.3d 232, 238 (5th Cir. 1994.)

Fuller argues that the ALJ failed to properly analyze the factors listed in 20 C.F.R. § 404.1527(d). (Pl. Br. at 15-16, citing *Newton*, 209 F.3d at 456-58.) But the Court finds that the ALJ's analysis in the record was adequate. (*See* Tr. 24.) The ALJ acknowledged that each physician had a long-standing relationship with Fuller. (Tr. 24.) He also noted that of the three physicians, only Prejean was a specialist. (*Id.*) Then he analyzed the doctors' opinions in light of the other medical evidence in the record and found that each of the three assessments, including Siy's, was entitled to little weight. (Tr. 23-24.) In *Newton*, the Court of Appeals mandated that an ALJ according little weight to a treating physician's opinion must give a detailed analysis, including the six factors enumerated in 20 C.F.R. § 404.1527(d), in only two circumstances: (1) where the ALJ summarily rejects the opinion of a treating physician based solely on the testimony of a non-specialty

medical expert who has not examined the claimant and (2) where the record does not contain "competing first-hand medical evidence." 209 F.3d at 458. Neither of those situations is present in the instant case. The ALJ did not choose to accept the opinion of a non-examining physician over the opinion of Siy, and the record contained "competing first-hand evidence." (*See, e.g.*, Tr. 23-24, 217, 292, 390, 393, 396, 648, 710, 747, 748, 759, 767). Thus, the Court finds that the ALJ applied the proper legal standard in assessing Siy's opinion and did not err in determining that it was entitled to little weight. (Tr. 23-24.)

### 2.    The ALJ properly evaluated Prejean's Opinion.

Fuller next argues that the ALJ failed to properly evaluate the opinion of Prejean, Fuller's treating psychiatrist. (Tr. 17-18, 23, 660.) In his analysis, the ALJ noted that Prejean opined that Fuller had marked limitations in her ability to sustain concentration, persistence and pace. (Tr. 23, 660.) But the ALJ determined that the other evidence in the record did not support Prejean's findings. (Tr. 23.) The evidence considered by the ALJ included progress notes from Tarrant County Mental Health and Mental Retardation Center ("MHMR"), where Prejean practices, as well as records from the JPS Psychiatric Department. (*Id.*)

The ALJ determined that Prejean's assessment conflicts with the record as a whole. In 2003, during a psychological consultative examination of Fuller, Patel noted that she was neatly dressed and groomed, made good eye contact, responded appropriately to questions, denied hallucinations and delusions, and had both spontaneous and goal-directed thought processes. (Tr. 23-24, 104.) In 2004, medical records from the JPS Behavioral Health Clinic indicate that Fuller was cooperative, had a neat appearance, demonstrated normal speech tone and rate, had a full affective range, showed

no mood elevations, and had intact memory, fair judgment and insight, and a well-organized thought process. (Tr. 512-13, 516, 518, 520, 522.) And in June 2006, MHMR examiners found that Fuller was "mentally and emotionally stable." (Tr. 860.)

Fuller complains that the ALJ improperly dismissed her low Global Assessment of Functioning ("GAF") scores, which he found to be inconsistent with the findings on Fuller's mental status examinations and which he said appeared to be based on her subjective complaints. (Tr. 23; Pl. Br. at 18, citing Tr. 659, assessing a GAF score of 48); *see* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* [34] (4th ed. text rev. 2000).[2]

In performing his analysis, the ALJ correctly noted that "a GAF score is not determinative of a claimant's ability to work and cannot be viewed in isolation and without regard to other evidence in the record." (Tr. 23.) Federal courts have specifically declined to find a correlation between an individual's GAF score and her ability or inability to work. *See* 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (Commissioner declines to endorse the GAF scale for use in Social Security and SSI disability programs, and states that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings."); *see also, e.g., Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005); *Glover v. Massanari*, 2001 WL 1112351, at *7 (N.D. Tex. Sept. 14, 2001). Thus,

---

[2] A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34.

Fuller's April 2007 GAF score is not irrefutable evidence that the ALJ's decision is erroneous or unsupported.

Moreover, as the ALJ noted in his decision, Fuller's report of drug use was frequently inconsistent. (Tr. 22.) For example, Fuller admitted to various medical personnel that she was using illegal drugs in November 2005 (marijuana and methamphetamine) (Tr. 635, 638), January 2006 (amphetamines) (Tr. 883) and August 2006 (marijuana) (Tr. 782), but she testified at her hearing that she had not used drugs since January 2004. (Tr. 961.) Thus, the ALJ was entitled to discredit her testimony regarding her drug use, including any self-reported "clean periods." (Tr. 22); *see Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

Finally, Fuller argues that the ALJ should have accorded Prejean's opinion "great weight." (Pl. Br. at 18-19, citing 20 C.F.R. § 404.1527(d).) But again, a detailed analysis of these factors is only necessary if there is an absence of "competing first-hand medical evidence" supporting the ALJ's decision. *Newton*, 209 F.3d at 458. In light of the first-hand medical evidence set forth above, a more detailed analysis was not required, and the Court finds that there is substantial evidence supporting the ALJ's determination. (Tr. 23-24.)

3.   The ALJ properly evaluated Tran's opinion.

Lastly, Fuller complains that the ALJ improperly evaluated Tran's treating physician opinion. (Pl. Br. at 19-20, citing Tr. 23.) In his assessment of Tran's opinion, the ALJ commented on the physical RFC evaluation Tran completed on July 17, 2007 at the request of Fuller's attorney. (Tr. 23, 907-09.) In that form, Tran was asked to specifically set forth the number of hours per day that Fuller could sit, stand/walk, and lie down/recline, not to exceed a total of eight hours. (Tr. 907.)

Tran stated, however, that she could sit for six hours, stand/walk for two hours, and lie down/recline for six hours, totaling fourteen hours. (Tr. 23, 907.) She also checked off items stating that Fuller could only occasionally bend, squat, climb, reach up, and kneel. (Tr. 23, 907-08.) The ALJ properly found that Tran's assessment was internally inconsistent. (Tr. 23-24.) He further found that it was not supported by any objective findings, and he therefore declined to give the assessment controlling weight, instead specifically according it little weight. (Tr. 23-24.)

First, the ALJ determined that Tran's assessment was internally inconsistent because Tran listed limitations adding up to a 14-hour day rather than an eight-hour workday. (Tr. 23, 907.) Next, the ALJ reiterated Tran's finding that Fuller's allegations of fatigue were inconsistent with evidence demonstrating only mild anemia. (Tr. 23, 728.) Fuller complains that it was improper for the ALJ to rely on this statement yet ignore Tran's speculation that Fuller had CFS. (Pl. Br. at 19-20.) But as the record demonstrates, Tran noted that she would "look into" the criteria for CFS and there is nothing in the record to show that she ever did so or that she took any steps to accurately diagnose Fuller with CFS. The ALJ properly reviewed the evidence before him, including Tran's statement about the unlikelihood of Fuller's fatigue being caused by mild anemia. (Tr. 23.)

The ALJ determined that Tran's July 2007 assessment was unsupported by other evidence in the record. (Tr. 23-24.) He noted that her assessment was internally inconsistent, and that it was based in part on Fuller's own report of fatigue, which Tran acknowledged was out of proportion with her anemia. (Tr. 23.) The ALJ commented that Tran's own records from August 2006 reflect that Fuller's musculoskeletal exam was "pretty much normal with a full range of motion," that Fuller had good pulses in her extremities, and that she had normal knee and hip x-rays. (Tr. 23, 747-48.)

Additionally, the record contains numerous physical examinations of Fuller yielding normal results. (*See, e.g.*, Tr. 292, 390, 393, 396, 648, 710, 759, 767.) None of this evidence supports Tran's opinion that Fuller had postural limitations in her ability to bend, squat, climb, or kneel. (Tr. 908.) Thus the Court finds that a more detailed analysis of the factors in 20 C.F.R. § 404.1527(d) was not warranted. *See Newton*, 209 F.3d at 458.

C. Whether substantial evidence supports the ALJ's residual functional capacity ("RFC") determination.

Lastly, Fuller asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider the vocational significance of all of her severe impairments. (Pl. Br. at 22-24.) She argues that the ALJ improperly found her capable of performing work in the national economy despite her severe cervical degenerative disc disease, CFS, and depression. (Pl. Br. at 22-23.)

The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th. Cir. 1990). After setting forth his analysis of Fuller's severe impairments and their impact on her functional ability to work, the ALJ formulated an RFC which took into account her physical and mental limitations in light of the evidence in the record. Physically, he limited Fuller to jobs consistent with light work, and he added the further limitation that she can only occasionally work overhead. (Tr. 24.) As for her mental limitations, the ALJ limited Fuller to jobs with a reasoning level of 1-3 as defined by the *DOT*, and he also limited her to positions that were not "high stress." (Tr. 24.) There is substantial evidence in the record supporting his determination.

Fuller claims that her degenerative disc disease and CFS make her physically incapable of performing work activity on a continuing basis. (Pl. Br. at 22.) But the ALJ fully reviewed the

relevant medical evidence, including the opinions of Siy, Prejean and Tran, and discredited those opinions for the reasons discussed previously in this opinion. (Tr. 213-24.) Moreover, Fuller was never actually diagnosed with CFS, (Tr. 748), and the record indicates that she was non-compliant with directives regarding medication prescribed to treat her depression. (Tr. 828-29.) Moreover, although Fuller claims that her degenerative disc disease prevents light employment, the record indicates that at least one physician, Ray, noted that she was able to sit, stand, and move without assistance, and that she could also walk heel to toe without difficulty. (Tr. 109.) Tran's notes indicate that Fuller's musculoskeletal exam was "pretty much normal with a full range of motion," and Siy found that she had a full range of motion in her neck. (Tr. 217, 747.) Again, the record is replete with physical examinations of Fuller yielding normal results. (*See, e.g.*, Tr. 225, 292, 390, 393, 396, 648, 710, 759, 767.)

As for Fuller's allegations of mental limitations, she claims that her "concentration and memory difficulties" preclude her from performing work with a reasoning level of one, two or three. (Pl. Br. at 24.) But there is no objective evidence or other evidence in the medical records to substantiate her claim, only her own testimony at her supplemental hearing. (*Id.*) Mental health examiners at JPS noted that Fuller had fair concentration, and Patel noted that she was able to subtract a series of sevens from 100 and repeat five digits forward and backward. (Tr. 104, 358, 508, 639.) The record also reveals normal memory results on other examinations. (*See, e.g.*, Tr. 184, 188, 190, 512-13, 516, 518, 520, 522.) The Court thus finds that there is substantial evidence to support the ALJ's determination that Fuller can perform work with a reasoning level of one to three and maintain competitive employment. (Tr. 24.)

In sum, there is substantial evidence to support the ALJ's RFC determination.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 3, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 3, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**

**October 13, 2010**

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE